## A01A1099. COLKITT v. THE STATE.
(555 SE2d 121)

POPE, Presiding Judge.

Robert Leon Colkitt appeals following his conviction on two counts of armed robbery. We affirm.

Viewed in the light most favorable to the verdict, the evidence showed that on June 16, 1999, a man entered a music shop in the Lovejoy Station shopping center in Clayton County. There were no other customers in the store, and only one employee, Christopher Fratt, was working. Fratt recognized the man as one of the store's regular customers, and at the trial, he identified the man as Colkitt.

---

Colkitt walked up to the counter, handed Fratt an empty red and white bag, pointed a gun at him and directed him to put money in the bag. After Fratt placed about $600 in the bag, Colkitt told him to walk to the back of the store. Colkitt then exited the store, and Fratt called the police. Fratt later picked Colkitt's picture out of a photo lineup.

On August 3, 1999, a man came into a sandwich shop at the same shopping center. Two employees, Yvonne Wood and Wanda Beem, were working in the store at the time. The man walked up to the counter, put a white bag on the counter and told Wood to give him all her money. Both Wood and Beem testified that they thought the man had a gun under the bag. The bag appeared to be in the shape of a gun, and the man kept his hand under the bag and pointed it. Wood said that she felt the man would kill her if she did not hand him the money. The man told Beem to go to the back of the store and, after Wood gave him the money, directed her to the back of the store as well.

The man then left the store. Wood got a piece of paper and ran after him. She saw him get into a white or tan Pontiac, "like a Sunbird," and drive off. Wood was able to get the license tag number and give it to police.

Shortly thereafter, a Clayton County police officer observed an individual in a brown-colored "Pontiac Sunfire" exiting the Lovejoy Station shopping center at a high rate of speed and running a stop sign. A couple of minutes later, he received a call notifying him of the sandwich store robbery and a second call describing the perpetrator's car. The officer turned around and began to search for the car he had just seen. When he was unable to locate it, he went to the address listed for the license number Wood gave police. At that address, Colkitt was taken into custody and taken to the sandwich shop for identification.

When police brought Colkitt to the sandwich shop, Wood identified him as the man who committed the robbery. She also identified Colkitt at trial as the perpetrator. Beem, however, was unable to identify Colkitt either the day of the robbery or later at trial as the man who robbed the sandwich shop.

Colkitt was tried for both robberies in the same trial and convicted of armed robbery in each instance.

1. Colkitt asserts that there was insufficient evidence to support his conviction for armed robbery at the sandwich shop because there was no evidence that the perpetrator ever showed a weapon or stated that he had a weapon.

Armed robbery occurs "when, with the intent to commit theft, [a person] takes property of another from the person or the immediate presence of another by use of an offensive weapon, *or any replica,*

*article, or device having the appearance of such weapon. . . ."*
(Emphasis supplied.) OCGA § 16-8-41 (a). This language contemplates that an armed robbery may be committed when the weapon is concealed. *McCluskey v. State*, 211 Ga. App. 205, 207 (2) (438 SE2d 679) (1993). Thus, the presence of a gun or other weapon may be proved by circumstantial evidence, and it is not necessary that the victim actually see the weapon. *Brabham v. State*, 240 Ga. App. 506 (1) (524 SE2d 1) (1999).

Nevertheless, "[s]ome physical manifestation is required or some evidence from which the presence of a weapon may be inferred[.] [Cit.] . . ." *McCluskey v. State*, 211 Ga. App. at 207 (2). The test is "whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon." (Citations and punctuation omitted.) *Prins v. State*, 246 Ga. App. 585, 586 (1) (539 SE2d 236) (2000). See also *Moody v. State*, 258 Ga. 818, 820 (1) (375 SE2d 30) (1989).

Here, both sandwich shop victims testified that the man placed a bag on the counter and demanded money while concealing his hand beneath the bag, and both victims testified that they saw the shape of a gun beneath the bag. This evidence supported a finding that the victims were under a reasonable apprehension that the man had a gun. See *Turner v. State*, 237 Ga. App. 642, 644 (1) (516 SE2d 343) (1999). Compare *Bradford v. State*, 223 Ga. App. 424 (477 SE2d 859) (1996) (no evidence that weapon used where no weapon seen and no evidence that defendant concealed his hand). And Wood positively identified Colkitt as the man who robbed her that day. We find, therefore, that the evidence was sufficient to sustain Colkitt's conviction for armed robbery under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Colkitt also asserts that the trial court erred in its supplemental charge after the jury requested "a clearer definition of armed robbery versus robbery." He argues that it was error for the trial court not to recharge that an indictment is not evidence and on the presumption of innocence and reasonable doubt in addition to the recharge on robbery and armed robbery. He also contends that both the original charge and the supplemental charge failed to follow the pattern jury instructions.

We find no merit to Colkitt's arguments. Following the trial court's initial charge to the jury, the court asked counsel if they had any objections to the charge. Colkitt's counsel replied, "No, Your Honor." Then in response to the jury's question, the court indicated that it would reread the definitions of armed robbery and robbery as previously charged and asked if counsel had any objection. Once again, Colkitt's attorney indicated that there was no objection. After

first admonishing the jury not to give undue emphasis to the supplemental charge over the initial charge, the trial court then recharged the jury on the definitions of armed robbery and robbery. At the conclusion of the recharge, Colkitt's counsel replied to the trial court's request for any objections, "Your Honor, my only objection would just be to singling out or taking a portion of the charge and to recharge the jury only on the weight to that portion of the charge."

The state contends that Colkitt has waived his objections to the charge by failing to properly object. A defendant may waive objections to a charge where he fails to object in response to the court's inquiry: "The right to raise an erroneous charge on appeal may be lost only in certain well-defined instances, as where defense counsel in response to an inquiry by the trial judge plainly states that he has no objections to the charge as given." (Citation and punctuation omitted.) *Bailey v. State*, 246 Ga. App. 337 (540 SE2d 298) (2000). We agree with the state that Colkitt has waived his objections to both the initial charge and the recharge on the ground that the trial court failed to track the pattern jury instructions because he failed to object on that ground. Rather, Colkitt's counsel affirmatively stated that he had no objection to the initial charge and no objection to the trial court's plan to reread that charge in response to the jury's question.

Nevertheless, we will review a charge, regardless of whether an objection was made, if a substantial error in the charge was harmful as a matter of law. OCGA § 5-5-24 (c). "In order to satisfy this standard, appellant must show that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial." (Citations and punctuation omitted.) *Miller v. State*, 240 Ga. App. 18, 20 (3) (522 SE2d 519) (1999). We find that Colkitt has failed to meet this standard.

Moreover, it is within a trial court's discretion whether to charge the jury on areas of the law not covered by the jury's question so long as the jury is not misled:

Where a jury, which has been fully and properly charged, requests a recharge on a specific question, it is within the discretion of the trial court whether to recharge entirely or to recharge only on the specific question. It is not error to recharge only on the specific question so long as the recharge taken alone does not leave an erroneous impression in the minds of the jury.

(Citations, punctuation and footnote omitted.) *Peake v. State*, 247 Ga. App. 374, 375 (1) (545 SE2d 309) (2000). After examining the initial charge and the recharge, we find no error.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED OCTOBER 5, 2001.

*Howard J. Weintraub*, for appellant.
*Robert E. Keller, District Attorney, Jack S. Jennings, Assistant District Attorney*, for appellee.